UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| JACELYN BEYERS, KEITH BOGGS, ADRIAN CRADY, JENAY CRAIG, JOHN CAMPBELL, MELINDA HEDGES, MICHAEL HEDGES, KIMBERLEE HOPPER, DENNIS MCGUIRE, ELIZABETH MCMILLEN, DAWN OLIVER, and RANDY PATTERSON, Plaintiffs, vs. PEPPERIDGE FARM, INC., Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:06-CV-954-SEB-VSS |

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**

This case is before the Court on the Motion to Remand filed by Jacelyn Beyers, Keith Boggs, Adrian Crady, Jenay Craig, John Campbell, Melinda Hedges, Michael Hedges, Kimberlee Hopper, Jerry Knotts, Dennis McGuire, Elizabeth McMillen, Dawn Oliver, and Randy Patterson (collectively "Plaintiffs" or the "Distributors"). On June 2, 2006, the Distributors filed in the Marion Superior Court their Verified Complaint for Injunctive Relief and Damages and their Motion for Preliminary Injunction. Thereafter, on June 16, 2006, Defendant, Pepperidge Farm, Inc. ("Pepperidge Farm"), filed its Notice of Removal, in which Pepperidge Farm contends that this court has subject-matter jurisdiction, under 28 U.S.C. § 1332(a), based on the diversity of citizenship between each of the Plaintiffs and the Defendant, and that the matter in controversy exceeds

$75,000. The Distributors, however, contend that the amount in controversy when considered on a per-plaintiff basis – including all requests for compensatory, statutory, and injunctive relief – does not exceed $75,000, and therefore this court lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a). Pls.' Brief at 3.

The Seventh Circuit recently explained that, when determining the amount in controversy, "[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." The Home Depot, Inc. v. Richer, 2006 WL 1727749, *1 (7th Cir. May 22, 2006) (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005)).[1]

> [T]he sum claimed by [the proponent of federal jurisdiction] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. Although the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy . . . once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is "legal certainty" that the controversy's value is below the threshold.

Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540 - 41 (7th Cir. 2006) (internal citations and quotations omitted). The Seventh Circuit has also suggested several ways in

---

[1] Both Plaintiffs and Defendant assert that defendant has the burden of showing that there is "a 'reasonable probability' that the minimum jurisdiction amount would be met for at least one of the named plaintiffs." Pls.' Brief at 2; citing Gould v. Artisoft, Inc., 1 F.3d 544, 547 (7th Cir. 1993); Def.'s Response at 6; citing Brill, 427 F.3d at 448. The parties are mistaken in this assertion: the defendant is not required to "prove" that there is a "reasonable probability" that the judgment will exceed the threshold. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540, 543 (7th Cir., Mar. 22, 2006) ("Reasonable probability that jurisdiction exists", a phrase with no provenance and no following outside this circuit, is banished from our lexicon." Id.; citing Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993)).

which the removing defendant, as the proponent of federal jurisdiction, can establish the amount a plaintiff stands to recover. For example:

> by contentions interrogatories or admissions in state court; by calculation from the complaint's allegations (as in Brill); by reference to the plaintiff's informal estimates or settlement demands (as in Rising-Moore); or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands (see Rubel v. Pfizer Inc., 361 F.3d 1016 (7th Cir. 2004)).

Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 - 42 (7th Cir. 2006) (stating that the "list is not exclusive").

The removing defendant may demonstrate the amount in controversy by referencing either the benefit to the plaintiff or the cost to the defendant of the requested relief. In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 610 (7th Cir. 1997) (acknowledging the "either viewpoint" approach). This analysis includes the value associated with compliance with an injunction directed to the defendant. Meridian Sec. Ins., 441 F.3d at 542. Future losses a defendant could realize over time if the requested injunctive relief is granted may also be considered as a cost of compliance. See, e.g., Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977) (measuring loss to apple growers and dealers that has occurred and will continue to occur if the challenged statute is enforced); In re Brand Name Prescription Drugs, 123 F.3d at 609 ("the minimum amount in controversy would be present if the injunction sought by the plaintiffs would require some alteration in the defendant's method of doing

3

business that would cost the defendant at least the statutory minimum amount." Id.).

Pepperidge Farm argues that the Distributors' request for injunctive relief and recovery on their fraud claims exceed the jurisdictional threshold of $75,000.[2] Count I of the Complaint challenges Pepperidge Farm's business practices, including: (1) Pepperidge Farm's practice of "directly delivering, or contracting with third parties to deliver, product to certain retail outlets" located within a distributor's territory; (2) Pepperidge Farm's "Pallet Program"; and (3) Pepperidge Farm's practice of limiting the amount of stale product for which Pepperidge Farm will give credit. Compl. ¶¶ 15(e)-(k). Pepperidge Farm's counsel argues:

> Because plaintiffs contend that Pepperidge Farm's business practices violate Indiana's franchise laws, and under Indiana Code § 23-2-2.7.2 a 'franchisor' may not '[d]iscriminate unfairly among its franchisees,' injunctive relief directing Pepperidge Farm to modify its business practices consistent with Indiana's franchise laws will necessarily impact not only plaintiffs, but every one of the sixty-three Biscuit and Bakery distributors in Indiana. . . . Therefore, even if only one plaintiff secures the injunctive relief sought here, Pepperidge

---

[2] In Exxon Mobil Corp. v. Allapattah Services, Inc., the Supreme Court held that, even if only one of the plaintiffs' claims satisfies the jurisdictional minimum, the court has original jurisdiction over a civil action under 28 U.S.C. § 1332 and can exercise supplemental jurisdiction over the remaining plaintiffs' claims under 28 U.S.C. § 1367. 125 S.Ct. 2611, 2620-21 (2005); see also Pfizer, Inc. v. Lott, 417 F.3d 725, 725-26 (7th Cir. 2005).
Pepperidge Farm argues that the amount in controversy in the form of lost commissions on Ms. McMillen's claim for deceit along with an award of treble damages, approximates $101,000.00. Def.'s Response at 4; citing Bogle Aff., ¶ 8; Compl. ¶¶ 12(c), 45-48. Using a similar analysis, Pepperidge Farm illustrates that Ms. Oliver seeks more than $300,000.00 on her fraud claim. Def.'s Response at 5; citing Bogle Aff., ¶ 9. Plaintiffs dispute the facts upon which Pepperidge Farm relies in computing the amount in controversy. We need not resolve these factual disputes as the amount in controversy surrounding the request for injunctive relief of the Pallet Program alone clearly exceeds $75,000.

Farm will be forced to modify its practices statewide.

Def.'s Response at 2; citing Aff. of Clare Bogle, ¶ 4 (Clare Bogle ("Bogle") is Pepperidge Farm's Director of Finance-Sales); see also In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 256 F. Supp. 2d 884, 895 (S.D. Ind. 2003) (Barker, J.) (holding that if the cost of complying with the injunctive relief would exceed the jurisdictional amount, removal of a case from state to federal court of the grounds of diversity is proper).

Plaintiffs specifically seek in this action to enjoin Pepperidge Farm's "Pallet Program" on the grounds that the practice violates Indiana's Deceptive Franchise Practices Act.  Compl. ¶ 15(e)-(h), (j), (k); ¶¶ 34-39.  "Pursuant to Pepperidge Farm's Pallet Delivery Program, Pepperidge Farm makes palletized deliveries to certain customers' warehouses and/or cross-docking facilities and charges the distributor an amount that represents a portion of Pepperidge Farm's cost to make the delivery."  Aff. of Bogle ¶ 5.  Pepperidge Farm asserts that "[i]f the Court grants [P]laintiffs' request for a permanent injunction forcing Pepperidge Farm to modify its business practices in Indiana by, among other things, preventing Pepperidge Farm from sharing a portion of the costs associated with making pallet deliveries, the net present value of what Pepperidge Farm would lose in pallet assessments over the next ten years is approximately $521,760.00."  Def.'s Resp. at 3; citing Bogle Aff., ¶ 6.  Bogle, Pepperidge Farm's Director of Finance-Sales, testified in her affidavit that:

> To calculate the total cost to Pepperidge Farm if it is

> prevented from sharing with distributors a portion of the costs associated with making pallet deliveries, I determined that the total amount of pallet assessment for all distributors in Indiana [there are sixty-three] through fifty weeks of FY2006 is $62,112.28. Based on my financial analysis using standard discounted cash flow modeling that assumes 6% pallet sales growth, I estimate that the net present value of that Pepperidge Farm would lose in pallet assessments over the next ten years to be approximately $521,760.00. A six percent growth rate is consistent with Pepperidge Farm's historical trends.

Aff. of Bogle ¶¶ 6, 4 (noting there are sixty-three distributors).

Plaintiffs respond that the Complaint and the Verified Motion for Preliminary Injunction merely request that the Pallet Program be operated in compliance with Indiana's franchise laws, and that Plaintiffs be compensated for product delivered under the Pallet Program in accordance with the terms of their Consignment Agreements. Pls.' Reply at 3; citing Aff. Disputing Bogle, ¶ 5, Aff. in Opp. to Removal, ¶ 1. Plaintiffs contend that the figures and assumptions Pepperidge Farm uses to support its claim are misleading because the total pallet assessments of $62,112.28 should have been apportioned to each of the affected distributors, not calculated as a total. Plaintiffs state that, assuming there are 63 distributors in Indiana, each distributor was assessed an average of $985.91 in pallet fees in fiscal year 2006. See Aff. Disputing Bogle, ¶ 3. The net present value of $985.91 in annual pallet fees, assuming the same six percent rate of return[3] and the same ten year time frame, equals $8,281.90, well below the jurisdictional

---

[3] The Distributors also dispute using a six percent rate of return. Aff. Disputing Bogle ¶ 4. They state that sales have not grown by six percent over the past four to five years, but in fact
(continued...)

limits.  Pls.' Reply at 4.

We are persuaded by Pepperidge Farm's argument that, if the Distributors succeed in securing injunctive relief, the injunction would likely affect Pepperidge Farm's business practices with regard to each of its sixty-three Indiana distributors, and not just the distributors named in the complaint.  See Ind. Code § 23-2-2.7.2(5) (prohibiting discrimination among franchisees or refusing to comply with any terms of a franchise agreement).  We find the testimony of Clare Bogle, Director of Finance-Sales at Pepperidge Farm ("Bogle") that the amount in controversy exceeds $75,000 logical and apparently made in good faith.  See Meridian Sec., 441 F.3d at 540 - 41; Rubel, 361 F.3d 1016.

The Distributors argue unconvincingly that the total pallet assessments should have been apportioned to each of the sixty-three distributors.  The cost of the injunction is borne by Pepperidge Farm, not by the distributors, and a removing defendant may make its demonstration of the amount in controversy by looking at the cost to defendant of complying with an injunction.  See In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d at 610; Meridian Sec., 441 F.3d at 542.  Thus, Pepperidge Farm permissibly calculated the total cost to itself in determining the impact of its being prevented from sharing with distributors a portion of the costs associated with making

---

[3](...continued)
have remained flat or increased no more than one percent.  Id.

pallet deliveries in accordance with an injunction to the Pallet Program.[4]

For these reasons, we conclude that jurisdiction lies in this court, pursuant to 28 U.S.C. § 1332(a), and Plaintiffs' Motion to Remand must be <u>DENIED</u>.  Pepperidge Farm's Motion for Leave to File Surreply to Plaintiffs' Motion to Remand [Docket No. 29] is <u>DENIED</u> as moot because the arguments contained within the Surreply were either repetitive or did not address the issue of the potential cost of an injunction of the pallet program, which we have found to be dispositive.  IT IS SO ORDERED.

Date:  08/29/2006

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Tony H. Abbott
POOL ABBOTT & FRYE LLP
tabbott@pafllp.com

Jason R. Delk
ICE MILLER LLP
jason.delk@icemiller.com

Donald F. Foley
FOLEY & TURNER
donf@foleyandturner.com

---

[4] Even if Bogle's calculations were based on a zero percent rate of return–as the Distributors argue is proper – rather than the six percent rate of return used by Bogle, an injunction against Pepperidge Farm's Pallet Program would cost the company an amount in excess of $75,000.

Susanne N. Geraghty
GOODWIN PROCTER LLP
101 California Street, Suite 1850
San Francisco, CA 94111

Forrest A. Hainline
GOODWIN PROCTER LLP
101 California Street, Suite 1850
San Franscio, CA 94111

Dana L. Luetzelschwab
FOLEY & TURNER
danal@foleyandturner.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com