## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JENAY CRAIG, et al., | ) |
|                 Plaintiffs, | ) |
| vs. | )    1:06-cv-954-SEB-JMS |
| PEPPERIDGE FARM, INC. | ) |
|                 Defendant. | ) |

**Entry Discussing Motion for Summary Judgment of Jenay Craig's Claims**

This case was originally brought by twelve Pepperidge Farm, Incorporated ("Pepperidge Farm") distributors. All but four of the distributors, Plaintiffs Jenay Craig, Randy Patterson, Dennis McGuire, and Elizabeth McMillen ("McMillen"), have dismissed their claims. This Entry addresses McMillen's claims. McMillen's sole remaining claim alleges that Pepperidge Farm violated Indiana Code § 35-43-5-3(a)(2), which prohibits deception. (See Count V of the Complaint at dkt 1, see also dkts 214 and 218 voluntarily dismissing all remaining claims.[1]) This criminal statute is actionable in a civil suit pursuant to Ind. Code § 34-24-3-1. McMillen's claim centers on allegations that Pepperidge Farm knowingly made false or misleading statements which led McMillen to pay too much for her Pepperidge Farm distributorship when she purchased it from outgoing distributor Mr. Randy Stahley in January 2005. Pepperidge Farm seeks resolution of this claim through a motion for summary judgment (dkt 172). McMillen has opposed this motion, stating that there are genuine issues of material fact and that Pepperidge Farm is not entitled to judgment as a matter of law.

**Summary Judgment Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c) of the *Federal Rules of Civil Procedure*. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008)(quoting *Sides v. City of Champaign,* 496 F.3d 820, 826 (7th Cir. 2007), and *Brummett v. Sinclair Broad. Group, Inc.,* 414 F.3d 686, 692 (7th Cir. 2005)).

---

[1] On February 28, 2007, the court granted the plaintiffs' unopposed motion to dismiss Counts II and III for alleged violations of the Indiana franchise laws. (See dkt 81.) Count I is now moot as it seeks injunctive relief only under the Indiana Franchise Act and the Indiana Deceptive Franchise Practices Act.

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Rule 56(c)).

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2). "'[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983))."The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). McMillen failed to meet that burden in this case. When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

**Statement of Facts**

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motions for summary judgment. "'[W]hen acting on a motion for summary judgment, the judge [should] consider[ ] only evidence that would be admissible at trial.'" *McKinney v. Duplain*, 463 F.3d 679, 692 n.5 (7th Cir. 2006) (*quoting Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845 (7th Cir. 1992)); *see also Hal Roach Studios v. Feiner*, 896 F.2d 1542, 1550 (9th Cir. 1989)("It is well established that unauthenticated documents cannot be considered on a motion for summary judgment."). *See also Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003)("[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission . . . .").[2]

---

[2] McMillen specifically objects to the use of her deposition transcript as evidence in support of the motion for summary judgment (dkt 234). This objection is overruled because the decision reached in this Entry does not rely exclusively upon the transcript for support. Therefore, the merits of McMillen's objection that the transcript is not a true and accurate record of her oral deposition need not be resolved at this time.

1.      In late May or early June of 2004, Pepperidge Farm District Sales Manger Karen Everts approached McMillen to discuss the possibility of McMillen purchasing a Pepperidge Farm distributorship from Mr. Randy Stahley.

2.      Pepperidge Farm sells its products to distributors who then deliver them to retail businesses within their exclusive territories (Sales Area). Distributors are paid by Pepperidge Farm for the inventories upon their sale at each retail outlet, generally, a 20% commission.

3.      In connection with her purchase of Mr. Stahley's Biscuit distributorship from Mr. Stahley, McMillen was provided a Route Analysis Worksheet and Route Sales Summary. See Dkt 175, Tabs 528 and 529. The Route Analysis Worksheet reflected the average weekly wholesale sales for Mr. Stahley's distributorship for the most recent fifty-two week period. The Route Sales Summary includes the purchase price that Mr. Stahley sought for his distributorship. Mr. Stahley calculated the purchase price that he wanted for his Pepperidge Farm distributorship by multiplying his reported average weekly sales for the most recent fifty-two (52) week period by the regional approved sales ratio of 26:1. Pepperidge Farm agreed to guarantee a loan to a prospective purchaser under its distributor loan program at this 26:1 ratio. Except for product delivered by Pepperidge Farm on pallet via warehouse deliveries, Mr. Stahley, and not Pepperidge Farm, provided the sales data that was used to calculate his fifty-two (52) week average. See Dkt 175, Tab 1050, ¶ 18. If Mr. Stahley did not report accurate sales data, the data reflected on the Route Analysis Worksheet would be inaccurate. *Id.*

4.      Mr. Stahley was free to set any price he wanted. Pepperidge Farm had no part in establishing the purchase price of the distributorship. Mr. Stahley originally set a purchase price of $185,000 for his route, but ultimately sold it for $165,000. Pepperidge Farm guaranteed the loan that McMillen received in connection with the purchase of her route.

5.      On December 1, 2004, McMillen countersigned the Desire to Sell form reflecting her agreement to purchase Mr. Stahley's distributorship for $165,000 and to enter into a new Consignment Agreement in the form currently being used by Pepperidge Farm. On December 1, 2004, McMillen also signed the Route Sales Summary reflecting her agreement to purchase Mr. Stahley's distributorship for $165,000. Tab 529.

6.      The Route Analysis Worksheet, the Route Sales Summaries, and the Desire to Sell form all state in bold and capital letters:

> NEITHER PEPPERIDGE FARM, INCORPORATED NOR ANY OF ITS RESPECTIVE EMPLOYEES OR REPRESENTATIVES MAKES ANY REPRESENTATIONS OR GUARANTEES WITH RESPECT TO THE SALES OR OTHER INFORMATION CONTAINED HEREIN, INCLUDING WITHOUT LIMITATION THE FAIR MARKET VALUE OF ANY EXISTING PEPPERIDGE FARM DISTRIBUTORSHIP OR WITH

> RESPECT TO THE TAX, FINANCIAL, OPERATIONAL OR LEGAL OUTCOMES OF ANY TRANSACTIONS OR ARRANGEMENTS TO ACQUIRE ANY SUCH DISTRIBUTORSHIP FROM ANY CURRENT PEPPERIDGE FARM DISTRIBUTOR. ANY INVESTMENT IN SUCH DISTRIBUTION RIGHTS INVOLVES POTENTIAL RISKS. EACH PROSPECTIVE PURCHASER SHOULD CONSULT WITH HIS, HER OR ITS OWN ADVISORS AS TO LEGAL, TAX, BUSINESS, FINANCIAL AND RELATED ASPECTS OF THE PURCHASE OF SUCH DISTRIBUTION RIGHTS. PAST PERFORMANCE IS NO GUARANTEE OF FUTURE RETURN.

Dkt. 175, Tabs 519-11-519-12, 528, 529.

7.     The following language is also printed immediately above McMillen's signature on the Route Sales Summary that McMillen signed on December 1, 2004:

> I, the undersigned, represent that I have made my own independent investigation, or had the opportunity to make my own independent investigation and declined to do so, of the material facts inherent in the purchase of the Distributorship, including, without limitation: (a) the perimeters of the described Territory, (b) the particulars (name, address, etc.) of the individual accounts and the chain accounts within the Territory, (c) the sales volume of the Territory, as well as the sales of each independent account, and each chain account within the Territory, and I also represent that I have not relied on any representation(s) made by Pepperidge Farm, Incorporated or any of its representatives with respect thereto. The information listed above has been provided by the seller(s) or by me and is correct to the best of my knowledge.

Tab 529. The same language is also printed on an earlier version of the Route Sales Summary that McMillen signed on September 20, 2004.

8.     Ralph DiVito, the Vice President of Sales Operations for Pepperidge Farm, testified that Pepperidge Farm receives no direct or indirect payment from any incoming distributor when he or she purchases a distributorship from an outgoing distributor, and therefore has nothing to gain from "inflating" the purchase price of distributorships.

9.     McMillen's Consignment Agreement dated January 10, 2005, contains an integration clause at paragraph 28, which states that:

> ENTIRETY OF CONSIGNMENT AGREEMENT. This Agreement represents the entire agreement between Bakery and Consignee and supersedes any and all prior franchises,

4

agreements or understandings between Bakery and Consignee, whether written or oral, regarding distribution of Consigned Products. This Agreement may not be amended orally or by custom or conduct but only by a writing signed by both Bakery and Consignee.

**Legal Analysis**

Under Indiana Code § 35-43-5-3(a)(2), a person commits criminal deception when he "knowingly or intentionally makes a false or misleading written statement with intent to obtain property. . . ."[3]

In *Ecker v. Rochester Ford New Holland, Inc.*, the Indiana Court of Appeals held that a deception claim requires proof of a false or misleading written statement. 694 N.E.2d 289, 291 (Ind. Ct. App. 1998). In addition, by its own terms, the criminal deception statute requires that the accused must know that the written statement is false when the statement is made. Ind. Code § 35-43-5-3(a)(2).

Indiana Code § 35-41-1-23 defines "Property" as anything of value. The term is broad and includes: (1) a gain or advantage or anything that might reasonably be regarded as such by the beneficiary; (2) real property, personal property, money, labor, and services; (3) intangibles; (4) commercial instruments; (5) written instruments concerning labor, services, or property; (6) written instruments otherwise of value to the owner, such as a public record, deed, will, credit card, or letter of credit; . . . (10) contract rights, choses-in-action, and other interests in or claims to wealth.

As explained below, McMillen's deception claim fails because she has not provided evidence of a 1) a false or misleading written statement 2) made with the intent to obtain property.

---

[3] This criminal statute is actionable in a civil suit pursuant to Ind. Code § 34-24-3-1, which provides:

If a person suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:
    (1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.
    (2) The costs of the action.
    (3) A reasonable attorney's fee. . . .

### 1. *McMillen fails to identify a false written statement*

McMillen alleges that Pepperidge Farm concealed, omitted or misrepresented material facts concerning the past and present value of Stahley's distributorship as well as the current and future growth potential of that sales area. McMillen's argument centers on her claim that the Route Analysis Worksheet and Route Sales Summary she was provided reflects an inflated average weekly wholesale sales dollar amount for Mr. Stahley's distributorship. McMillen asserts that Pepperidge Farm knew or should have known that the average weekly wholesale sales amount was inflated because it included delivery to stores which she was not permitted to service because they did not accept direct store delivery.

Pepperidge Farm responds by stating that any purportedly false statements are not actionable because McMillen's Consignment Agreement contains an integration clause that "supersedes any and all prior . . . agreements or understandings between Bakery and Consignee, whether written or oral." Dkt. 175, Tab 519-08. In regards to McMillen's claims that the Route Analysis Worksheet or the Route Sales Summary contain false statements regarding the distributorship's average weekly sales, Pepperidge Farm points out that it specifically warns purchasing distributors that it does not make any "representations or guarantees with respect to the sales or other information contained" on the documents provided purchasing distributors, and advises prospective purchasers to undertake their own investigation of the validity of the figures before acquiring a Pepperidge Farm distributorship. The documents McMillen signed when she purchased her route, including the Route Sales Summary, state that "PAST PERFORMANCE IS NO GUARANTEE OF FUTURE RETURN." By signing the Route Sales Summaries, McMillen verified that she had either made an independent verification, or declined to independently verify "the sales volume of the Territory, as well as the sales of each independent account, and each Chain account within the Territory." Finally, Pepperidge Farm contends that the the Consignment Agreement does not promise distributors that they will be able to service the same retail stores that prior distributors serviced and the exclusion of Speedway and Deal$ stores from McMillen's territory description are not only accurate, but consistent with McMillen's Consignment Agreement because these stores notified Pepperidge Farm that they would no longer accept direct store delivery.

McMillen's deception claim necessarily fails because she has provided no evidence that Pepperidge Farm made false written statements and that it knew the statements were false when it made them. First, there is no evidence that the Route Analysis Worksheet is in fact an inaccurate reflection of Mr. Stahley's wholesale weekly sales figures. Second, there is no evidence that McMillen was given a written promise that she could distribute product to stores which were later restricted. Third, to the extent that McMillen claims that Pepperidge Farm made false oral statements about the expected value of her route, those allegedly false oral statements are not actionable. Ind. Code § 35-43-5- 3(a)(2) (requiring a false written statement); *Ecker*, 694 N.E.2d at 291 (same). Without evidence that Pepperidge Farm made false written statements and that it knew the statements were false when it made them, McMillen's claim necessarily fails.

## 2. *There is no evidence that Pepperidge Farm obtained property, or intended to obtain property, as part of the alleged deception*

McMillen argues that Pepperidge Farm had a property interest in the sale of Stahley's distributorship to her. She speculates that Stahley owed Pepperidge Farm money which gave Pepperidge Farm the motivation to recruit a buyer who could purchase the distributorship at a price sufficient to recover Stahley's debt. Pepperidge Farm was able to implement its scheme because Stahley's Consignment Agreement provided that the Distributorship may not be sold, conveyed or transferred by Stahley without the prior written approval of Pepperidge Farm and that such approval will be conditioned on Stahley's payment in full, prior to such sale, any debt to Pepperidge Farm.

McMillen's theory is flawed because as Pepperidge Farm explained, it receives no direct or indirect payment from any incoming distributor when he or she purchases a distributorship from an outgoing distributor, and therefore has nothing to gain from "inflating" the purchase price of distributorships. McMillen purchased her route from the owner Mr. Stahley, a former Pepperidge Farm distributor, and not Pepperidge Farm. Furthermore, Pepperidge Farm guaranteed the loan that McMillen secured in connection with the purchase of Mr. Stahley's route, and Pepperidge Farm would be concerned about providing a guarantee on a loan used to purchase a distributorship if the value of the route were inflated.

### Conclusion

As explained above, summary judgment must be granted in favor of Pepperidge Farm on McMillen's deception claim. No partial final judgment shall issue at this time as to the claim resolved in this Entry.

**IT IS SO ORDERED.**

Date: 10/24/2008

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jason R. Delk
ICE MILLER LLP
jason.delk@icemiller.com

Susanne Noyes Geraghty
GOODWIN PROCTER LLP
sgeraghty@goodwinprocter.com

Forrest A. Hainline III
GOODWIN PROCTER LLP
fhainline@goodwinprocter.com

Elizabeth Frances Stone
Goodwin Procter LLP
estone@goodwinprocter.com

Philip A. Whistler
ICE MILLER LLP
philip.whistler@icemiller.com

JENAY CRAIG
725 E. Epler Avenue
Indianapolis, IN 46227

DENNIS MCGUIRE
6825 Farmleigh Drive
Indianapolis, IN 46220

ELIZABETH MCMILLEN
8589 Sunningdale Road
Indianapolis, IN 46234

RANDY PATTERSON
2730 S. Pasadena Street
Indianapolis, IN 46203